Wm. Breck Seiniger, Jr. (ISB 2387)
SEINIGER LAW OFFICES, P.A.
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax:    (208) 345-4700
Email: wbs@seinigerlaw.com

Attorney for the Estate of Scot Noble Payne

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALBERT PAYNE and SHIRLEY NOBLE as Representatives of and on behalf of THE ESTATE OF SCOT NOBLE PAYNE, Deceased, and not in their individual capacities.<br><br>        PLAINTIFF<br><br>vs.<br><br>ROBYN SANDY, member of the Idaho Board of Corrections, CAROLINE MELINE, member of the Idaho Board of Corrections, JAY L. NIELSON, member of the Idaho Board of Corrections, VAUGHN KILLEEN, former Director of the Idaho Department of Corrections, BRENT REINKE, Director of the Idaho Board of Corrections, JEFF ZMUDA, Chief Compliance Officer of the Idaho Board of Corrections, SHARON LAMM, Deputy Admin. Evaluation/Compliance, JEFF HENRY, Idaho Department of Corrections,  DIANE BAUNE, Idaho Department of Corrections,  MARK DONNELLAN, Idaho Department of Corrections, | **CIVIL CASE NO. 09-cv-89**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

MARK BONNELLAN, Idaho Department of
Corrections,  JAY CHRISTIANSON, Idaho
Department of Corrections,  KEITH THOMAS,
Contracts Officer, Idaho Dept. of Corrections,
SHANNON CLUNEY, Emergency Coordinator,
Idaho Dept. of Corrections MARY PERRIEN, Chief,
Div. of Ed. and Treatment, Idaho Dept. of Corrections,
PAM SONNEN, Idaho Dept. of Corrections, PAM
AHRENS, Former Director of the Idaho Department
of Administration, KEITH JOHNSON, Former
Director of the Idaho Department of Administration,
MIKE GWARTNEY, Director of the Idaho
Department of Administration, William Oldham, and
JOHN DOES I through X, whose true identities are
unknown, all in their individual capacities.

DEFENDANTS

COME NOW SHIRLEY NOBLE and ALBERT PAYNE as representatives of and on
behalf of the Estate Of Scot Noble Payne, deceased, (The Estate Of Scot Noble Payne hereinafter
referred to as "Plaintiff") and not in her individual capacities, by and through counsel, and for
cause of action alleges as follows:

## I.

## JURISDICTION

1.  The court has jurisdiction over the lawsuit under 28 U.S.C. § 1332 (a) because the Plaintiffs
    and the Defendants are citizens of different states and the amount in controversy far exceeds
    the minimum federal jurisdictional amount of $75,000, excluding interest and costs, and
    because Plaintiff asserts claims arise under 42 U.S.C. § 1983 with respect to which this
    Court has jurisdiction authorized by 28 U.S.C. § 1343(a)(3) or by virtue of federal question
    jurisdiction statute 28 U.S.C. §1331.

2.  The Court has supplemental jurisdiction over any state law claims, including the claim of the

**COMPLAINT AND DEMAND FOR JURY TRIAL – p.  2**

Estate of Scot Noble Payne brought under TEX. CIV. PRAC. & REM. CODE § 71.021

under 28 U.S.C. § 1367 over Plaintiff's claims against Defendants because Plaintiff's claims

are so related to the claims within the court's original jurisdiction that they form part of the

same case or controversy under Article 3 of the United States Constitution.

## II.

## VENUE

3.   Venue is proper in the Eastern Division of the District of Idaho because one of the

Defendants "resides" within Bannock County, 28 U.S.C. 1391 (a) and (c). All of the

defendants are subject to personal jurisdiction in Idaho.  28 U.S.C. 1391 (a).

## III.

## PARTIES

4.   Plaintiff Estate of Scott Noble Payne is the estate of Scott Noble Payne, deceased, situated in

and a resident of the State of Texas.

5.   Shirley Noble is the natural mother of Scot Noble Payne, an heir at law of Scot Noble

Payne, and a proper representative of the Estate of Scot Noble Payne.

6.   The Idaho Department of Correction is a department of the State of Idaho and an Idaho

government agency controlled by a three-member board appointed by the governor to six-

year terms.

7.   Defendant Robyn Sandy is or was at all relevant times a resident of the State of Idaho and a

member of the Idaho Board of Corrections and is sued in her individual capacity.

8.   Defendant Carolyn Meline is or was at all relevant times a resident of the State of Idaho and

a member of the Idaho Board of Corrections and is sued in her individual capacity.

9.   Defendant Jay L. Nielson is or was at all relevant times a resident of the State of Idaho and a

**COMPLAINT AND DEMAND FOR JURY TRIAL – p.   3**

member of the Idaho Board of Corrections and is sued in his individual capacity.

10. Defendant Vaughn Killeen is or was a resident of the State of Idaho and was the employed as the Director of the Idaho Department of Corrections and an employee of the State of Idaho Department of Corrections, and/or the Idaho Board of Corrections and acted on behalf of the executive branch of State of Idaho at relevant times with respect to the claims set forth herein. He is sued in his individual capacity.

11. Defendant Brent Reinke is or was a resident of the State of Idaho and was the employed as the Director of the Idaho Department Of Corrections and an employee of the State of Idaho Department of Corrections, and/or the Idaho Board of Corrections and acted on behalf of the executive branch of State of Idaho at relevant times with respect to the claims set forth herein. He is sued in his individual capacity.

12. Defendant Shannon Cluney is or was a resident of the State of Idaho and was the employed as the Emergency Coordinator, Idaho Dept. of Corrections and an employee of the State of Idaho Department of Corrections, and/or the Idaho Board of Corrections and acted on behalf of the executive branch of State of Idaho at relevant times with respect to the claims set forth herein. He is sued in his individual capacity.

13. Defendant Pam Sonnen is or was at all relevant times a resident of the State of Idaho and an employee of the State of Idaho Department of Corrections, and/or the Idaho Board of Corrections, and is sued in her individual capacity. Upon information and belief she was the Chief of the Divisions of Prisons of the Idaho Department of Corrections and acted on behalf of the executive branch of State of Idaho at relevant times with respect to the claims set forth herein. She is sued in his individual capacity.

14. Defendant, Jeffrey D. Zmuda, is or was at all relevant times herein resident of the State of

Idaho and was employed as the Chief Compliance Officer of the Idaho Board of Corrections an employee of the State of Idaho Department of Corrections, and/or the Idaho Board of Corrections, and acted on behalf of the executive branch of State of Idaho at relevant times with respect to the claims set forth herein. He is sued in his individual capacity.

15. Defendant Sharon Lamm is the Chief Contract Compliance Officer and/or Deputy Administrator of Evaluation/Compliance was of the Idaho Board of Corrections and is or was at all relevant times a resident of the State of Idaho and an employee of the State of Idaho Department of Corrections, and/or the Idaho Board of Corrections and acted on behalf of the executive branch of State of Idaho at relevant times with respect to the claims set forth herein. She is sued in his individual capacity.

16. Defendant Jeff Henry is or was at all relevant times a resident of the State of Idaho and an employee of the State of Idaho Department of Corrections, and/or the Idaho Board of Corrections, and acted on behalf of the executive branch of State of Idaho as a Captain in the Idaho State Board of Corrections of the State of Idaho and now is the Warden of the Idaho Department Of Corrections at relevant times with respect to the claims set forth herein. He is sued in his individual capacity.

17. Defendant Diane Baune is or was a resident of the State of Idaho and an employee of the State of Idaho Department of Corrections, and/or the Idaho Board of Corrections and acted on behalf of the executive branch of State of Idaho at relevant times with respect to the claims set forth herein. She is sued in his individual capacity.

18. Defendant Mark Donnellan is or was a resident of the State of Idaho and an employee of the State of Idaho Department of Corrections, and/or the Idaho Board of Corrections and was an employee of the State of Idaho and acted on behalf of the executive branch of State of Idaho

at relevant times with respect to the claims set forth herein.  He is sued in his individual capacity.

19. Defendant Mark Bonnellan is or was a resident of the State of Idaho and an employee of the State of Idaho Department of Corrections, and/or the Idaho Board of Corrections and was an employee of the State of Idaho and is sued in his individual capacity.

20. Defendant Jay Christianson and is or was at all relevant times a resident of the State of Idaho and an employee of the State of Idaho Department of Corrections, and/or the Idaho Board of Corrections and acted on behalf of the executive branch of State of Idaho at relevant times with respect to the claims set forth herein.  He is sued in his individual capacity.

21. Defendant Jay Christianson is or was the Deputy Warden and is or was a resident of the State of Idaho and was an employee of the State of Idaho and acted on behalf of the executive branch of State of Idaho at relevant times with respect to the claims set forth herein.  He is sued in his individual capacity.

22. At all relevant times herein Defendant Keith Thomas was a citizen of the State of Idaho and was Contract Compliance Officer for the Idaho Department of Corrections and was an employee of the State of Idaho and acted on behalf of the executive branch of State of Idaho at relevant times with respect to the claims set forth herein.  He is sued in his individual capacity.

23. At all relevant times herein Defendant Pam Ahrens was a citizen of the State of Idaho and was Director of the Department of Administration of the of State of Idaho at relevant times with respect to the claims set forth herein.  She is sued in his individual capacity.

24. At all relevant times herein Defendant Keith Johnson was a citizen of the State of Idaho and was Director of the Department of Administration of the State of Idaho at relevant times

with respect to the claims set forth herein.  He is sued in his individual capacity.

25. At all relevant times herein Defendant Mike Gwartney was a citizen of the State of Idaho
and was Director of the Department of Administration of the of State of Idaho at relevant
times with respect to the claims set forth herein.  He is sued in his individual capacity.

26. John Does I through X, whose true identities are unknown, were agents or employees of the
State of Idaho charged with the responsibility to oversee the conditions of the confinement
of Scot Noble Payne and similarly situated Idaho inmates sent out-of-state private prison
facilities and to make certain that those conditions complied with the inmates constitutional
rights, the contracts entered into by the State of Idaho and GEO requiring the observation
and protection of those rights, and rights existing under Idaho statutes providing for the care
and safe keeping of Idaho inmates, such statutes having been passed, at least in part for the
benefit of Idaho inmates' safety, security and health.

27. The Defendants are members of the Idaho Board of Corrections, the and agents and/or
employees of the Idaho Department of Corrections or the Idaho Department of
Administration charged with carrying out the duties imposed upon the Idaho State Board of
Corrections, the Idaho Department of Corrections, and the Idaho Department of
Administration.

## IV.

## GENERAL ALLEGATIONS RELATING TO THE DUTIES AND AUTHORITY OF THE IDAHO BOARD OF CORRECTIONS AND THE IDAHO DEPARTMENT OF CORRECTIONS

28. The Department of Corrections is an executive arm of the State of Idaho.

29. Pursuant to Idaho Code § 20-209, the Idaho State Board of Corrections is charged with the
control and management of Idaho's correctional facilities and prisoners.

**COMPLAINT AND DEMAND FOR JURY TRIAL – p.  7**

30. Pursuant to Idaho Code § 20-209, the State Board Of Correction has the authority to promulgate rules required by law or necessary or desirable to carry out all duties assigned to the department of correction pursuant to the provisions of Chapter 8, Title 20, Idaho Code, which authority shall include the power and duties to prescribe standards, rules and procedures for licensure of private prison contractors.

31. Pursuant to Idaho Code § 20-209 the Idaho Board Of Correction has the control, direction and management of such correctional facilities as may be acquired for use by the state board of correction, must provide for the care, maintenance and employment of all prisoners committed to its custody, has the authority to enter into contracts with private prison contractors for management or operation of private prison facilities to provide said care for prisoners, subject to the requirements and limitations set forth in Idaho Code § 20-241A.

32. Pursuant to Idaho Code § 20-209 the Idaho Board Of Correction all final decisions by the board are subject to review pursuant to the provisions and procedures of the administrative procedure act, chapter 52, title 67, Idaho Code.  The Idaho Department of Administration has co-responsibility to develop a uniform contract for use in contracting with private prison contractors.

33. Pursuant to Idaho Code § 20-241A(1) the Idaho Board Of Correction may enter into an agreement with a private prison contractor in another state to provide for the safekeeping, care, subsistence, proper government, discipline, and to provide programs for the reformation, rehabilitation and treatment of prisoners.

34. Pursuant to Idaho Code § 20-241A(1) the state board of correction must not enter into an agreement with an authority unable to provide the degree or kind of safekeeping, care and subsistence required by state or federal laws, the constitution of the state of Idaho, the

**COMPLAINT AND DEMAND FOR JURY TRIAL – p.   8**

United States constitution, and the rules adopted by the state board of correction.  All

contracts for the housing of Idaho inmates by a private prison contractor are subject to this

requirement.

35. Pursuant to Idaho Code § 20-241A(1)(a) an authority or private prison contractor, receiving

physical custody for the purpose of incarceration of a person sentenced by a court under the

terms of an agreement made under this section, is considered as acting solely as an agent of

the State of Idaho.

36. Pursuant to Idaho Code § 20-241A(2)(b) no contract may be awarded to a private prison for

receiving physical custody of an Idaho inmate until the private prison contractor

demonstrates to the satisfaction of the state board of correction that the contractor possesses

the necessary qualifications and experience to provide the services specified in the contract,

and that the contractor has the ability to comply with applicable corrections standards and

that the proposed private prison facilities or the correctional services proposed by the

contractor meet constitutional minimums.

37. Pursuant to Idaho Code § 20-241A(3) any contract between the state board of correction and

a private prison contractor, whereby the contractor provides for the housing, care, and

control of inmates in a non-departmental facility operated by the contractor must meet

standards as required by the Idaho Department Of Corrections.

38. Pursuant to Idaho Code § 20-214, the State Board Of Correction has the power and authority

to employ, to specify the training, and to fix the duties of such assistants, officers and other

persons necessary for the proper and efficient administration of the Idaho Department Of

Corrections, and generally for the carrying out of the provisions of Idaho Code Title 20

dealing with the operation of prisons within and without the State of Idaho.

**COMPLAINT AND DEMAND FOR JURY TRIAL – p.   9**

39. Pursuant to Idaho Code 20-217A the Idaho State Board of Corrections shall appoint a Director of Corrections, who shall be the chief administrative officer for the board. Defendant Reinke was appointed by the Idaho Board of Corrections to this position and served in that capacity at all times relevant herein.

40. Pursuant to Idaho Code § 20-241A(6) the Director of the Idaho Department of Correction or his designee must monitor the performance of the private prison contractor.

41. Pursuant to Idaho Code § 20-241A(6) all contracts with private prison contractors must provide for the State of Idaho to retain clear supervisory and monitoring powers over the operation and management of the private institutions to insure that the inmates are properly cared for.

42. Scot Noble Payne had a right to substantive due process under the foregoing statutes and Idaho Code Title 20 generally to the care, safety and security required by the statutes and any rules or regulations adopted pursuant to those statutes.

43. Scot Noble Payne had a right to substantive due process under the foregoing statutes and Idaho Code Title 20 generally to the standards required by Idaho law for his care, safety and security.

## V.

### FACTS RELATING TO THE IDAHO DEPARTMENT OF CORRECTIONS CONTRACT WITH THE GEO GROUP, INC. PROVIDING FOR THE TRANSFER OF IDAHO INMATES TO THE STATE OF TEXAS FOR INCARCERATIONI IN A PRIVATE PRISON

44. Due to a problem with prison over crowding the Idaho Department of Corrections/Board of Corrections of Corrections entered into one or more contracts the GEO Group (hereinafter "GEO") to house inmates committed to its care, custody and control in out of state prisons. The contract providing for inmate services at the Dickens Country Correctional Center

where Scot Noble Payne was incarcerated within the State of Texas is attached hereto as Exhibit A. This document is referred to hereinafter as "the CONTRACT". For purposes of notice pleading the term CONTRACT also includes any other relevant agreements between the GEO GOUP, Inc. and The Idaho Department of Corrections.

45. Pursuant to Idaho Code § 20-805 contracts providing for the housing, care, and control of prisoners in a facility operated by the contractor, were required to contain, in addition to other provisions, terms and conditions a requirement that the private prison contractor provide the services in a facility which meets correctional standards satisfying constitutional minimums, state and federal laws, rules and regulations and applicable court orders, including, but not limited to, all sanitation, food service, safety and health regulations.

46. The operation of the private prison by GEO and its agents and employees carried out a function historically and traditionally the exclusive province of the State of Idaho.

47. Pursuant to the CONTRACT, the GEO GROUP, Inc. was required to meet "OPERATING STANDARDS" defined in the CONTRACT by reference to federal, state, and local law, and other referenced standards.

48. A failure to meet the OPERATING STANDARDS defined in the CONTRACT by GEO GROUP, Inc. was a breach of the CONTRACT.

49. The Idaho Board of Corrections reserved the right to manage, supervise, monitor, and control GEO GROUP, Inc.'s performance under the CONTRACT to the extent necessary to protect the constitutional rights of Idaho inmates housed at DCCC.

50. Upon the failure of the GEO GROUP, Inc. to meet the OPERATING STANDARDS defined in the CONTRACT, or its failure to provide conditions of confinement within constitutional minimums guaranteed by the United States Constitution and/or the Idaho Constitution, the

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 11**

Idaho Board of Corrections reserved unto itself, and was authorized and empowered to take immediate action to terminate the CONTRACT or take such other immediate action as required to take immediate action to protect the constitutional rights of Idaho inmates and immediately restore any deprivation of those rights.

51. Alternatively, The Idaho Board of Corrections did not reserve the right to manage, supervise, monitor, and control GEO GROUP, Inc.'s performance under the CONTRACT to the extent necessary to protect the constitutional rights of Idaho inmates housed at DCCC, and upon the failure of the GEO GROUP, Inc. to meet the OPERATING STANDARDS defined in the CONTRACT, or its failure to provide conditions of confinement of Idaho inmates within constitutional minimums guaranteed by the United States Constitution and/or the Idaho Constitution to take immediate action to protect the constitutional rights of Idaho inmates and immediately restore any deprivation of those rights.

52. To the extent that the Defendants responsible for entering into the CONTRACT failed to reserve those rights under the CONTRACT, the Defendants abandoned the Idaho Department of Corrections rights and responsibilities to monitor the performance of the CONTRACT and to take immediate action to protect Idaho inmates incarcerated at DCCC from the deprivation of their constitutional rights was deliberately indifferent to the protection of those rights.

53. The Defendant Directors of the Idaho Department of Administration were deliberately indifferent to their obligations as set forth above.

54. The absolute delegation of authority for protecting the care, health and security of Idaho inmates for any period of time without reserving the right of the Idaho Department of Corrections to require immediate action to protect the statutory and constitutional rights of

said inmates violated the foregoing statutes and Scot Noble Payne's right to substantive due process.

55. Prior to entering into the CONTRACT the Idaho Board of Corrections and the Idaho Department of Corrections knew, or in the exercise of reasonable care should have known, that the GEO GROUP, Inc. was notorious for operating private prisons that placed the health and wellbeing of inmates to said prisons in serious jeopardy and/or violating the constitutional rights of inmates transferred to its prisons. Defendants were deliberately indifferent to whatever knowledge they had that would have caused reasonable persons to decline to enter into the CONTRACT, or, at a minimum, verify and guarantee that the GEO GROUPS, Inc. intended to and was capable of insuring the constitutional rights of Idaho inmates and meeting the operating standards set forth in said CONTRACT.

## VI.

### FACTS RELATING TO THE VIOLATION OF SCOT NOBLE PAYNE'S CONSTITUTIONAL RIGHTS

56. In 2006, Scot Noble Payne was convicted of a felony in Ada County, State of Idaho. A judgment of conviction was entered against him and he was remanded into the care and custody of the Idaho State Department of Corrections, and/or the Idaho Board of Corrections, hereinafter referred to as "the Idaho Department of Corrections/Board of Corrections".

57. During the period of incarceration Scot Noble Payne had constitutional rights to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution and Article I § 6 of the Constitution of the State of Idaho and the right to substantive due process under the First and Fourteenth Amendments of the United States Constitution and the correlative and analogous provisions of the Constitution of the State of

Idaho

58. Defendants are persons who were for all purposes described herein acting under color of state law who proximately caused the deprivation of Scot Noble Payne's federally protected rights. Their conduct was state action. The conduct of the Defendants alleged herein was in furtherance of their responsibilities under Idaho state law and within the course and scope of their employment by the State of Idaho.

59. In all of their acts and omissions relevant to Plaintiff's claims, the Defendants were exercising custodial and/or supervisory authority on behalf of the State of Idaho.

60. The Defendants acted under the color of state law and assumed the mantle of the state, because the State of Idaho delegated to them decisions necessary to insure the safety and well being of the Plaintiff and similarly situated individuals.

61. Defendants were responsible for evaluating, reviewing supervising and controlling the actions of the GEO GROUP, Inc. a contractor providing private prison facilities to the Idaho Department of Corrections for purposes of Idaho inmates transferred to its facilities for incarceration. All of the acts and omissions of the GEO GROUP, Inc.'s officers, agents, employees and contractors taken pursuant to the CONTRACT GEO GROUP, Inc. and the State of Idaho Department of Corrections were state action within the control of the Defendants, for which the Defendants are liable.

62. Alternatively, upon information and belief, the Defendants acted under the color of state law by conspiring with state officials and/or GEO by taking actions that constituted a deprivation of Scot Noble Payne's constitutional rights by unconstitutionally utilizing the state's procedures.

63. Defendants had a statutory, common law, and contractual duty to, or assumed a voluntary

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 14**

duty to monitor, supervise and control the conditions of the confinement of Scot Noble Payne and similarly situated Idaho inmates sent to the DCCC facility to make certain that those conditions complied with the inmates constitutional rights, the CONTRACT entered into by the State of Idaho and GEO requiring the observation and protection of those rights, and rights existing under Idaho statutes providing for the care and safe keeping of Idaho inmates, such statutes having been passed, at least in part for the benefit of Idaho inmates safety, security and health.

64. GEO and its agents and employees jointly participated with the Defendants and the State of Idaho Department of Corrections in denying Scot Noble Payne the constitutional rights as described herein.

65. The conditions of the confinement of Scot Noble Payne caused him to be subjected to a deprivation of his civil rights and proximately caused his death.

66. Defendants did little or no monitoring of out-of-state inmates, despite repeated complaints from prisoners, their families and a prison inspector.

67. The Defendants monitoring of out-of-state inmates at DCCC was deliberately indifferent to and in reckless disregard to Scot Noble Payne's rights under the United States Constitution and the laws of the State of Idaho.

68. Defendants had actual knowledge of the plaintiffs' basic human needs and deliberately refused to meet those needs

69. The Defendants acted upon behalf of the State of Idaho relying on information given to them by GEO and its agents and employees and failed to exercise independent judgment

70. The operation of DCCC by GEO with respect to Idaho inmates constituted state action.

71. The State of Idaho bore an affirmative obligation to provide safe, healthy conditions of

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 15**

confinement to Scot Noble Payne and to insure that those conditions of confinement did not constitute cruel and unusual punishment.  The State of Idaho delegated that function GEO; and GEO voluntarily assumed that obligation by contract.

72.  Defendants and GEO's officials had a duty to Scot Noble Payne to ensure that he was provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.

73.  Defendants and GEO's officials failed to ensure those conditions of confinement and those deprivations denied Scot Noble Payne the minimal civilized measure of life's necessities. This failure was sufficiently grave to form the basis of an Eighth Amendment violation.

74.  The Defendants provided DCCC with such significant encouragement, either overt or covert, in subjecting Scot Noble Payne to the conditions that lead to his death that the conduct of, and relevant decisions made by GEO's agents and employees regarding the conditions of Scot Noble Payne's confinement at DCCC must in law be deemed to be that of the State of Idaho.

75.  The Defendants responsible for preparing and executing the CONTRACT described above with GEO failed to require said CONTRACT to contain terms sufficient to require GEO to satisfy constitutional minimums, state and federal laws, rules and regulations and applicable court orders, including, but not limited to, all sanitation, food service, safety and health regulations.

76.  The Defendants responsible for enforcing the terms of the CONTRACT described above with GEO failed to require GEO to satisfy constitutional minimums, state and federal laws, rules and regulations and applicable court orders, including, but not limited to, all sanitation, food service, safety and health regulations as required by the CONTRACT.

77.  The private prison operated by GEO called Dickens County Correctional Center (DCCC) in

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 16**

Spur, Texas did not meet those requirements.

78. Scot Noble Payne was transferred from Idaho to serve time in a privately owned and operated a GEO facility called Dickens County Correctional Center (DCCC) in Spur, Texas.

79. Moreover, because the Idaho Department of Corrections/Board of Corrections and the Defendants knew, or in the exercise of reasonable care should have known, that out-of-state prisons operated by GEO at which Scot Noble Payne was incarcerated, and specifically DCCC, were operated for profit, the defendants were aware that this created at least a potential disincentive for providing adequate care for Idaho inmates in their custody to the extent that the performance of those responsibilities were unprofitable.

80. Defendants knew, or in the exercise of reasonable care should have known that the create of a profit motive in the operation of a prison required them to observe a higher level of scrutiny with respect to the performance of the CONTRACT than would have been necessary in the operation of a correctional facility owned and operated by the State of Idaho.

81. Therefore, the Idaho Department of Corrections/Board of Corrections and Defendants had a constitutional, statutory and common-law duty of due care to carefully monitor such prisons and to enter into contracts reserving unto the State of Idaho the right to control quality of care of Idaho inmates in the operation of such prisons by setting and overseeing the criteria applicable to the execution of that duty of care, and to exercise that right of control for the protection and safety of Idaho inmates housed in GEO prisons.

82. Inmates such as Scot were generally housed in deplorable conditions in large dormitories, in general population with serious and minor offenders thrown together.  Due to inhumane conditions created by GEO, Scot Noble Payne became depressed and suicidal.

83. The Idaho Department of Corrections/Board of Corrections and Defendants knew, or in the exercise of reasonable care should have known that the out-of-state prison operated by GEO at which Scot Noble Payne was incarcerated, and specifically DCCC, did not meet constitutional minimums, state and federal laws, rules and regulations and applicable court orders, including, but not limited to, all sanitation, food service, safety and health regulations, and that the care provided to Idaho inmates was likely to be inadequate to protect the health and welfare of any inmates transferred out of state and that such care was intolerable.

84. The conditions described above existed at all times during the period of time that Scot Noble Payne was incarcerated at DCCC for approximately seven months

85. Scot Noble Payne's conditions of confinement included a lack of sanitation that was so severe or prolonged as to constitute an infliction of pain and cruel and unusual punishment within the meaning of the Eighth Amendment.

86. In his despair, Scot attempted to escape, and was recaptured.

87. In retaliation for Scot Noble Payne's escape, he was then housed in a solitary confinement cell that was an extremely cold and filthy room with mold and water standing on the floor in the cell.

88. In retaliation for Scot Noble Payne's escape Scot's blanket, pillow and sheets on the bunk were filthy when he entered into solitary confinement, and remained the same, covered with blood and human excrement during the entire time he was so incarcerated.   The room smelled of horrible odor.

89. In retaliation for Scot Noble Payne's escape he was not allowed to change his clothes for long periods of time.

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 18**

90. With the exception of solitary confinement, the foregoing actions and conditions were not authorized by, and were in breach of, the CONTRACT, and in violation of constitutional, statutory and common law.

91. As a result of the generally constitutionally deficient conditions of confinement to which Scot Noble Payne was subjected, and the conditions to which he was subjected in retaliation for his escape, Scot Noble Payne became so depressed that he was put on suicide watch by GEO.

92. These conditions included grossly inhumane treatment, abuse, neglect, unconstitutional, illegal and malicious conditions of confinement of which the Defendants herein were aware, or in the exercise of due care and their statutory duties should have been aware.

93. The failure of the Idaho Department of Corrections to take adequate action to diagnose and treat Scot Noble Payne's depression, particularly after he was put on suicide watch, and to insist upon and enforce policy and practices designed to protect the health of Scot Noble Payne under such circumstances, was in violation of his rights under applicable constitutional, statutory and common law.

94. The Defendants were aware of, or should have been aware of said conditions by virtue of the fact that Defendants regularly visited DCCC and prepared reports circulated to the other Defendants describing the conditions of confinement at said facility.

95. Specifically, during the period of time that Scot Noble Payne was housed at the Dickenson Facility, Defendants Christenson, Lamm, Henry, Baune and Donnellan at various times separately (and with respect to Defendants Baune and Donnellan together) traveled to the State of Texas and inspected DCCC.  Upon information and belief, these defendants either became aware of the deplorable conditions described above, or, alternatively, were,

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 19**

negligent, reckless, wanton, willful, and grossly negligent in failing to observe such

conditions which were open and obvious and capable of being observed at such times as

these defendants were present, or intentionally avoided observing the entire facility

generally, and at least some of the areas where Idaho inmates were housed.

96.  Alternatively, no officials from the Idaho Department of Corrections took any significant

action to monitor or enforce the terms of the CONTRACT requiring GEO to protect the

health, safety, statutory and constitutional rights of Scot Noble Payne.

97.  On or about March 4, 2007, while on suicide watch in solitary confinement, Scot Noble

Payne committed suicide with a razor provided by GEO.  His suicide was caused by specific

breaches of the duties imposed on the Idaho Department of Corrections/Board of

Corrections by statute and common-law and contractual duties imposed upon GEO under

the CONTRACT.

98.  The conditions of confinement of Scot Noble Payne persisted for at least several weeks after

his suicide.

99.  The fact that the conditions that lead to Scot Noble Payne's suicide were constitutionally

deficient and constituted cruel and unusual punishment and a denial of substantive due

process was evidenced by the fact that such conditions were open and obvious, or at a

minimum readily discoverable is evidenced by the fact that on March 13, 2008, Idaho

Department of Corrections Health Care Director, Don Stockman, performed a site

evaluation of DCCC in Spur, Texas.  The inhuman conditions that Scot Noble Payne had

suffered had not changed between the period of time that he was subjected to them and the

time of Mr. Stockman's inspection of the DCCC facility.

100. Mr. Stockman observed that DCCC was one of:

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 20**

" the worst correctional facilities I have ever visited. The physical plant is filthy, and does not provide a safe and secure setting for either inmates or staff. Custody staff appear to possess only the basic knowledge required to work in a prison setting. The administration and custody staff, from the Warden on down, project an open contempt for inmates and express little concern for the dire living conditions of the inmates. Based on verbal statements made by Warden Alford it is clear that his management style is based on verbal and physical [intimidation] of the inmates he is mandated to provide protective custodial care. It is difficult to comprehend how the contract provider, "GEO, Inc." could not be aware of the deplorable conditions that exist at DCCC or the behavior of Warden Alford and his staff. Warden Alford has created a negative prison culture that is deeply ingrained and will remain long after he no longer is the Warden. Basically, DCCC is a facility that is beyond repair or correction."

101. He further observed that the physical condition of the cell where the suicide occurred does not, in my opinion, comply with any standards related to inmate housing for either Segregated housing or housing for inmates on suicide watch. The physical environment of the cell would have only enhanced the inmate's depression.

102. After inspecting the prison Stockman declared it the worst facility he had ever seen. Don Stockman called Payne's cell unacceptable and the rest of the Dickens County Correctional Center "beyond repair."

103. Stockman reported to the Idaho Department of Corrections that "The physical environment [at DCCC] would have only enhanced the inmate's depression that could have been a major contributing factor in his suicide".

104. Stockman reported that the warden at Dickens ruled "based on verbal and physical intimidation" and that guards showed no concern for the living conditions.

105. In addition, Defendant Keith Thomas, the Idaho Department of Corrections' Contract Compliance Officer, noted:

"A doctor analyzed Mr. Payne's case and identified failures and policy violations beginning with the preseg screening. In their documentation of Mr. Payne's time on suicide watch they indicate that they violated their own policy.

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 21**

They specify the level of watch to require 15 minute checks on an irregular basis but have periods of 25 minutes without a check."

106. These conditions violated the contract that the State of Idaho had entered into for the care and custody of Idaho inmates, and the defendants had a duty to take immediate action to rectify such conditions under statutory and common-law.

107. The conditions described above were readily observable to the Defendants who went to inspect DCCC during the period of time that Scot Noble Payne was incarcerated there, but were deliberately disregarded.

108. The Defendants had actual knowledge of an excessive risk to Scot Noble Payne's health or safety and deliberately disregarded that risk.

109. As a direct and proximate result of the occurrence, Scot Noble Payne suffered severe trauma, extreme physical injuries, extreme pain and suffering, extreme disfigurement and death.

110. Defendants conspired to deprive, acted in concert to deprive, and did deprive Scot Noble Payne of his constitutional right to be free from cruel and unusual punishment and to due process under the Fourteenth Amendment to the United States Constitution and under Article I, Section 13 of the Constitution of the State of Idaho, all in violation of 42 U.S.C. § 1983 and his right to safe and humane care under the foregoing statutes and such other statutes as may be applicable imposing a duty upon the Idaho Board of Corrections/Department of Corrections and the Defendants to protect that safety and security of prisoners of the State of Idaho.

111. With respect to the acts and omissions relevant to Plaintiff's claims, Defendants were supervisory officials who exercised power possessed by virtue of Idaho state law and made possible only because they were clothed with the authority of Idaho state law. Their acts

and omissions described below manifested recklessness and callous disregard and indifference to the rights of Scot Noble Payne.

112. Defendants exercised their supervisory authority with deliberate indifference to, or acquiesced in their subordinates unconstitutional conduct and their acts and omissions were affirmatively linked to the deprivation of Scot Noble Payne's federal rights.

113. With respect to the acts and omission of the Defendants complained of herein, the Defendants were either directly engaged in unconstitutional conduct, or in their supervisory capacity acting on behalf of the State of Idaho.

114. With respect to the acts and omission of the Defendants complained of herein, Defendants acted with deliberate indifference to Scot Noble Payne's rights under the United States Constitution under the Eighth Amendment right to be free from cruel and unusual punishments and his right under the First and Fourteenth Amendment to substantive due process, and those rights under the analogous provisions of the Idaho Constitution and its statutes.

115. The conduct of the Defendants alleged herein was in violation of Scot Noble Payne's clearly established rights under federal law.  Said conduct was not objectively reasonable.

116. In all of the foregoing, Defendants acted with the requisite state of mind necessary to state a claim under 42 U.S.C. § 1983.

117. All conditions precedent have occurred or have been performed.

## VII.

## CAUSES OF ACTION

**Deprivation of Civil Rights**

118. Plaintiff incorporates for foregoing facts and allegations as though set forth herein *in haec*

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 23**

*verba.*

119. Scot Noble Payne's rights secured by the Constitution or laws of the United States were violated.

120. These violations were committed by a person or persons acting under the color of state law.

121. Based upon the facts asserted above, Plaintiff's civil rights were violated giving rise to a right to a cause of action and the remedies provided by 42 U.S.C. § 1983 and other remedies available under that section.

122. All of the elements to state a cause of action under 42. U.S.C. § 1983 exist as reflected in the foregoing facts.

123. The actions of the Defendants proximately caused the Estate of Scot Noble Payne the damages set forth below.

**Negligence / Gross Negligence**

124. Plaintiff incorporates for foregoing facts and allegations as though set forth herein *in haec verba.*

125. The Defendants were grossly negligent, reckless, intentional and/or negligent in proximately causing the suffering and death of Scot Noble Payne, and damages to his estate. These injuries and damages were foreseeable and proximately caused by the Defendants' negligent, reckless, grossly negligent and intentional, callous indifference to and disregard of legal duties of care including the following acts, omissions, and breaches which proximately caused Plaintiffs' injuries:

126. Defendants permitted GEO to abuse and neglect its contractual duties towards Scot Noble Payne.

127. Defendants negligently, recklessly, knowingly, or intentionally, and with callous

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 24**

indifference to and disregard of Scot Noble Payne's constitutional rights, failed to provide a safe environment and a healthful place to live for Scot Noble Payne.

128. Defendants with callous indifference to and disregard of Scot Noble Payne's constitutional rights, permitted GEO to negligently, recklessly, knowingly, or intentionally failed to provide a safe environment and a healthful place to live for Scot Noble Payne.

129. Defendants negligently, recklessly, knowingly, or intentionally, and with callous indifference to and disregard of Scot Noble Payne's constitutional rights, failed to provide or maintain custodial care and services free from unreasonable risk of harm as would a reasonable jailor of ordinary prudence under the same or similar circumstances.

130. Defendants with callous indifference to and disregard of Scot Noble Payne's constitutional rights, permitted GEO to negligently, recklessly, knowingly, or intentionally fail to provide or maintain custodial care and services free from unreasonable risk of harm as would a reasonable jailor of ordinary prudence under the same or similar circumstances.

131. Defendants with callous indifference to and disregard of Scot Noble Payne's constitutional rights, negligently, recklessly, knowingly, or intentionally failed to use reasonable care to supervise or control the correctional officers as would a reasonable jailor of ordinary prudence under the same or similar circumstances.

132. Defendants with callous indifference to and disregard of Scot Noble Payne's constitutional rights, permitted GEO to negligently, recklessly, knowingly, or intentionally fail to use reasonable care to supervise or control the correctional officers as would a reasonable jailor of ordinary prudence under the same or similar circumstances.

133. Defendants with callous indifference to and disregard of Scot Noble Payne's constitutional rights, permitted GEO to negligently, recklessly, knowingly or intentionally hire and retain

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 25**

unqualified corrections officers, inadequately trained and equipped such officers, and

inadequately staffed the facility as would a reasonable jailor of ordinary prudence under the

same or similar circumstances.  Furthermore, Defendants negligently failed to implement

adequate safeguards to keep Scot Noble Pane free from injury.

134. Defendants with callous indifference to and disregard of Scot Noble Payne's constitutional

rights, negligently, recklessly, knowingly, or intentionally failed to provide adequate

policies, procedures, or regulations, as would a reasonable jailor of ordinary prudence under

the same or similar circumstances.

135. Defendants with callous indifference to and disregard of Scot Noble Payne's constitutional

rights, permitted GEO to negligently, recklessly, knowingly, or intentionally fail to provide

adequate policies, procedures, or regulations, as would a reasonable jailor of ordinary

prudence under the same or similar circumstances.

136. Defendants, with callous indifference to and disregard of Scot Noble Payne's constitutional

rights, negligently, recklessly, knowingly, or intentionally failed to comply with existing

policies, procedures, or regulations, as would a reasonable jailor of ordinary prudence under

the same or similar circumstances.

137. Defendants, with callous indifference to and disregard of Scot Noble Payne's constitutional

rights, permitted GEO to negligently, recklessly, knowingly, or intentionally fail to comply

with existing policies, procedures, or regulations as would a reasonable jailor of ordinary

prudence under the same or similar circumstances.

138. Defendants, with callous indifference to and disregard of Scot Noble Payne's constitutional

rights, negligently, recklessly, knowingly, or intentionally failed to enforce the contract with

GEO requiring it meet correctional standards satisfying constitutional minimums, state and

federal laws, rules and regulations and applicable court orders, providing for the safety and security of Scot Noble Payne.

139. Defendants, with callous indifference to and disregard of Scot Noble Payne's constitutional rights, negligently, recklessly, knowingly, or intentionally failed to include provisions in the State of Idaho's contract with GEO requiring it meet correctional standards satisfying constitutional minimums, state and federal laws, rules and regulations and applicable court orders, providing for the safety and security of Scot Noble Payne.

140. Each of such acts and omissions, singularly or in combination with others, constituted negligence and gross negligence that proximately caused the injuries that decedent suffered and that resulted in his death.

141. As a direct and proximate cause of the negligent acts and/or omissions aforementioned, decedent suffered cuts to his wrists, ankles and throat. Decedent was caused to suffer serious and permanent personal injuries, and death.

142. The actions of the Defendants proximately caused the Estate of Scot Noble Payne the damages set forth below.

**Survival Claim**

143. Plaintiff incorporates for foregoing facts and allegations as though set forth herein *in haec verba.*

144. Plaintiff brings this survival action pursuant to TEX. CIV. PRAC. & REM. CODE, 71.001 et. seq. and 71.021, respectively, because of injuries suffered by the decedent resulting in decedent's death occurring in the State of Texas, based upon the facts and legal theories more fully set out above.

145. Pursuant to TEX. CIV. PRAC. & REM. CODE § 71.021 the Estate of Scot Noble Payne has

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 27**

a cause of action for personal injury that did not abate because of his death.

146. Under Texas law a personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. The action survives against the liable person and the person's legal representatives.

147. Defendants were charged with duties arising under the statutes, rules and regulations of the State of Idaho and the common law to the health and safety of Scot Noble Payne.

148. The Estate of Scot Noble Payne is situated in the State of Texas.

149. The State of Idaho entered into a CONTRACT with GEO to transfer Idaho inmates to its facility in Texas, including Scot Noble Payne.

150. Pursuant to the terms of the CONTRACT the State of Idaho delegated to GEO the responsibility to protect all of Scot Noble Payne's constitutional and statutory rights. The contract provided that substantially all of the actions to be taken by GEO would be performed within the State of Texas.

151. At the time of his death and of the relevant acts herein, Scot Noble Payne was incarcerated in GEO's facility in the State of Texas, DCCC, and was a resident of the State of Texas.

152. Defendants had a non-delegable duty of due care towards Scot Noble Payne, an Idaho inmate to inspect and control the conduct of GEO at the private prison (DCCC) it operated in the State of Texas to which Payne had been transferred while remaining under the care and custody of the Idaho Department of Corrections.

153. In addition to the Defendants' common-law duties, Defendants were charged with statutory duties arising under the statutes, rules and regulations of the State of Idaho for the purpose of protecting, amongst other things, the health and safety of Scot Noble Payne.

154. Any violation of said statutes, rules and regulations, having been enacted and adopted for

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 28**

the protection of the safety of individuals committed to the care and custody of the Idaho Department of Corrections, was negligence *per se*.

155. In fact, substantially all of the acts and omissions complained of herein either occurred in the State of Texas or, in the case of decisions made in Idaho with regard to Idaho inmates transferred to GEO's facilities in the State of Texas, those decisions were made for the express purpose of being effected within the State of Texas and by action or inaction determined the acts and omissions of GEO that occurred in the State of Texas.

156. Defendants retained the right of control over GEO by contract, and acted in concert with them in maintaining and allowing to be maintained the conditions of confinement to which Scot Noble Payne was subjected.

157. Alternatively, Defendants independently and negligently violated their statutory and common law duties to protect the health and safety of Scot Noble Payne, an individual involuntarily in their care and custody, and under their control.

158. Defendants negligently, recklessly, and intentionally failed to exercise their right and duty to inspect the DCCC and control the conduct of GEO at that facility in the State of Texas.

159. Due to the negligence of the Defendants Scot Noble Payne was subjected to the conditions leading to his death in the State of Texas, and died in the State of Texas.

160. Decedent was injured as a result of Defendants' negligent, reckless, and intentional failure to exercise their right and duty to inspect and control the conduct of GEO in the State of Texas described more fully above. As a result of said occurrence, the decedent suffered bodily injuries resulting in the decedent's death.

161. Shirley Noble is the personal representative of decedent's estate. She brings this suit solely in that capacity.

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 29**

162. The Estate of Scot Noble Payne seeks damages for the conscious pain and suffering and mental anguish that the decedent suffered prior to death.

163. The actions of the Defendants proximately caused the Estate of Scot Noble Payne the damages set forth below.

164. Plaintiff Estate of Scot Noble Payne seeks damages within the jurisdictional limits of the court.

## VIII.

## EXEMPLARY DAMAGES

165. Defendants were aware, or should have been aware, that it was substantially certain that injury to Scot Noble Payne would occur as a result of the conditions at DCCC. Alternatively, Defendants engaged in conduct which, when viewed objectively from their standpoint at the time of occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which the Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others, including Scot Noble Payne. Defendants caused Scot Noble Payne serious harm, including pain, suffering, mental anguish, physical injury, and his death.

166. Defendants are liable for their own acts and the acts of GEO and its employees because Defendants authorized the doing and the manner of the act; the employees of GEO were unfit and Defendants acted with malice in employing or retaining the GEO as a contractor for the State of Idaho, the Defendants were acting in the scope of employment; or Defendants ratified or approved the acts and omissions of GEO.

## IX.

## DAMAGES FOR PLAINTIFF, THE ESTATE OF SCOT NOBLE PAYNE

167. During his lifetime, decedent was industrious and energetic.  As a direct and proximate result of the occurrence made the basis of this lawsuit, Scot Noble Payne was caused to suffer great physical and emotional injury, and death.

168. As a direct and proximate result of the occurrence made the basis of this lawsuit, Scot Noble Payne incurred the following damages:

169. Physical pain and suffering in the past;

170. Mental anguish in the past;

171. Physical impairment and disfigurement in the past;

172. Loss of earning and lost earning capacity in the past and future; and

173. Death.

## X.

## JURY DEMAND

Plaintiff demands a trial by jury.

## X.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1.    Judgment in favor of Plaintiff for damages to be proven at trial or at hearing in this matter;

2.    An award of reasonable attorney fees and costs pursuant to 42 U.S.C. 1988

3.    For such other and further relief as the Court may deem just and proper.

**COMPLAINT AND DEMAND FOR JURY TRIAL – p. 31**

Dated March 3, 2009.

By:_____
Wm. Breck Seiniger, Jr. (ISB# 2387)
Attorney for the Estate of Scot Noble Payne